Case number 23-5429, USA v. Gary Crawford. Defendant, appellant, judgment on a criminal case, argument not to exceed 15 minutes per side. Mr. Crawford, you may proceed for the appellant. Good morning. If it pleases the Court, my name is Kenneth P. Tableman. I'm here representing Mr. Gary Crawford, who is the appellant in this criminal appeal. I wanted to start, well, I would like to reserve four minutes for rebuttal. Very well. I wanted to start my discussion this morning to distinguish Mr. Crawford's case from the case of Mr. Goins in the Court's published case, which related to the constitutionality of criminalizing possession of a firearm while a person is on supervised release after a felony conviction. My client, too, was on supervised release after conviction for a felony, but his case is different than Mr. Goins'. First of all, the Goins' test said we take several factors together. Is the person on restriction as a condition of supervision after a felony offense? That's true in Mr. Crawford's case. Was the supervision quotation marks relatively short for a dangerous crime? Well, Mr. Goins was on supervision for four years. Four years seems rather long to me. My client was on supervision for three years. He fails that test, but supervision for a dangerous crime? Here's a distinction. My client was on supervised release for possessing a firearm after a felony conviction. The Court has held in other contexts that the mere possession of a firearm is not a dangerous offense. So that's the first distinction. The next area of distinction or discussion would be in Goins' three-part test was, does the criminal history show that the defendant is dangerous? Mr. Goins had multiple recent convictions relating to drinking and driving and similar offenses. My client had a years-old conviction for felon in possession. Before that, years before, as a very young man, he had two convictions for possession of small quantities of marijuana with intent to distribute. Before that, as a juvenile, although tried as an adult, he had a conviction for, I believe it was reckless homicide, an unintentional killing. I want to ask you about that first conviction, or the last conviction you mentioned as juvenile, or adult conviction as a juvenile. So he was, as I understand it, shot into a crowd of people and killed someone as part of that conviction? Yes, Your Honor. Okay. And here, whenever he was arrested, he was shooting a gun. Well, Your Honor, respectfully, the shooting was never established. The gun, you're talking, well, let me back up. Didn't he have a machete in one hand? Yes, Your Honor. And he was shooting a gun in the other hand? No, the court is referring to the conduct underlying the instant felon in possession conviction. The shooting was never established. The gun, in fact, was unloaded at the time it was recovered. So there's nothing in the record that there was actually a loaded gun in his hand? The record would say unloaded gun, but it's inconclusive as to shooting. Okay. If I might, Your Honor, to follow up on that, I'm not so sure that under the Eric Williams test in this court's cases that it's appropriate to consider conduct related to the instant felon in possession offense. Conduct at the time of the arrest, you're not supposed to consider that under Williams? Yes, Your Honor. I would suggest that that's not appropriate. And what are you pointing to in Williams that would say that? I can only think at this moment of a memory that I have of a footnote in the Vaughn case saying that Williams did not hold that that was required. So I can't point the court to a case like that. And why would you say it shouldn't be considered? Well, felon in possession is what I would call a status offense. It's not like armed robbery. It's not like counterfeiting. It's not like other crimes where people have done something and the facts are resolved. Felon in possession is you just possess a firearm. That's what you've pled guilty to. And to get into what else went on in terms of determining dangerousness at that time, I think it's not appropriate. He was at least waving the firearm, wasn't he? Oh, yes, Your Honor, yes. So it was more than just mere possession of a firearm? Absolutely, Your Honor. It was a very dangerous situation, I will concede. And also the machete would be considered dangerous? Oh, I think so. Although, I mean, the machete was recovered on the street. It's not like he was alleged to have waived it at somebody. Well, it's not normal for people to carry around machetes. No, Mr. Crawford was clearly undergoing some type of severe mental crisis at the time. Well, if we look at Williams' guidance, it makes clear that it's talking about any evidence of past convictions in the record as well as other judicially noticeable information. So if we assume that present-day events are not applicable under Williams and there's a line, I think, of reasoning that would say that that's correct, it is not considerable. But what we've got here is a fairly extensive conviction history. And I'm struggling a little bit with why the, I think it was, criminally negligent homicide of shooting into a crowd and the other crimes that are part of his past do not evidence dangerousness. Well, I think it's a fair question, Your Honor, and this is a developing area of the law. Let me counterbalance that with he's 16 years old when he shoots into a crowd. Now he's 32. He's 20 years old when he possesses less than about a half an ounce of marijuana. Now he's 32. Our jurisprudence, as far as I can tell, takes no consideration of the passage of time and all those things. And I think there's a, I know this panel can't overrule Williams, but I think there's a problem here. We're going down the same road that we went down with the residual clause in the Armed Career Criminal Act where now we're going to ask judges to parse through people's criminal histories and fight about what they can consider and what they can, and the circumstances of what went on in the past. And here we have a charge based on a status offense, felon in possession. And, again, respectfully, I know I'm tilting at a windmill here, but if you look at the Goins case, it says, well, supervised release in office alone for us to criminalize this and avoid the Second Amendment constitutional problem. Well, I feel in looking at the Goins case, which cites the Moore case from, I think, the Third Circuit, and they're looking at trying to find, following the Bruin example, they're trying to find historical, representative historical analogs that would permit the, uphold the constitutionality of the prosecution. And, well, if you read those historic... Might I ask, I understand that argument and you've articulated it. I'm more interested if you would address why you think that this is a jury question. We're talking about a fact-laden decision. Well, wasn't one of the points of Williams, though, that judges make dangerousness determinations all of the time? Magistrate judges on initial appearances, for instance, make a determination as to whether or not someone is a danger to the community. At sentencing, judges are taking into consideration prior criminal history and determining where within a guideline range they're going to sentence someone. And they're taking into consideration these issues of dangerousness, right? Absolutely, Your Honor. And here, in addition to... I know that we've kind of focused on the reckless endangerment that was an adult conviction from when he was a juvenile, but in addition to that, he has a domestic assault conviction too, right? Yes, he does. And the circumstances surrounding that conviction involved him, if I recall correctly, and I don't have it right here in front of me, but punching someone in the face multiple times and dragging them across the floor, right? Yes. So what is so difficult about determining the factual circumstances in this instance and determining dangerousness for purposes of 922G1? What would distinguish that from other instances where district judges are making those determinations? Here, the very determination subjects the defendant to, under current law, 15 years in prison. There, in those other situations, there's already been a jury trial where it's sentencing. There's been a determination by a jury where it's sentencing. Here, the very threshold that permits the government to take away this man's liberty depends on some factual determinations about his circumstances, and I think that distinguishes it. Again, we're talking about a constitutional right, and I think if I can pivot back to my historical analogs, it's not that clear. People in the founding era were sentenced. They went to prison. They were executed. They forfeited their goods and chattels. There was no probation. There was no supervisory lease. And the Moore case and the Goins case that derives on it says, well, here we found a Virginia case where the person served his sentence in quotation marks. Sure, he was required to go to an armed vessel for seven years without pay. Is that really that different than prison when we're talking about a sailing boat in the 1790s? I don't think so. If you recall press gangs, that's not a pleasant thing. The modern probation, the modern supervisory lease, if I could just finish my thought here, is much more lenient, and I would say respectfully it's not historically appropriate. Thank you very much. Thank you. May it please the Court. Mark S. Young for the United States. The judgment of the district court should be affirmed for two reasons. One, under plain error review, there is no obvious or clear error that binding precedent hold that 922G1 violates the Second Amendment or that a jury is mandated to make a dangerous determination as applied to a defendant. And two, there is no error that affected the outcome of the proceedings because the defendant is in fact dangerous based on his criminal history. The defendant has the burden to show plain error, which is the standard at this level. In addressing whether there is obvious or clear error, this court addressed it in United States v. Cartwright. In Cartwright, this court stated that the defendant cannot successfully contest or challenge his 922G1 conviction based on Bruin under plain error review. There is no decision from the Supreme Court or to this court which specifically says that 922G1 is invalid. Likewise, with respect to the issue of jury determination, there is no court that specifically states that a jury must make the determination as to whether the defendant is dangerous. Are you aware of any case law that's held under plain error review that there's a violation of the Second Amendment by applying 922G1? No, Your Honor. I'm not aware. With respect to the jury determination issue, to the contrary, I believe Williams specifically states that a district court makes that decision and potentially even an executive agent. Williams kind of went through the historical analysis which stated that, for example, a justice of peace could make the decision and disarm individuals as which was done during the colonial era. In addition, as Justice Davis stated, that currently the district judges make those type of determinations presently. Whether it's making a decision with respect to detention or bond, they have to determine the dangers of the individual, as well with respect to sentencing of an individual. Again, the dangers of the individual is analyzed. What about the youth factor with regard to the first conviction? What's the government's position on that? That can be a factor. However, it is of no consequence in this case. As the district judge stated at a sentencing hearing during Crawford sentencing, the defendant has a consistent history of violence and possession of firearms. Isolating, of course, that 2009 criminal negligent homicide conviction, it may be questionable. However, the defendant has a history of drug trafficking where she was convicted twice in 2012 and 2013. And as Williams stated, drug trafficking also presents a very potential serious risk of dangerousness, which is that second tier of dangerousness upon which the Williams court decided. Just to give an example of dangers with drug trafficking, I believe the defense stated that it was only a small amount of marijuana. However, it still involved drug trafficking. It could have been any issue that arose during that dangerous situation, which typically drug dealers, they don't call police when they're robbed of their drug proceeds or such. In addition to those two, those convictions, the defendant has a conviction for domestic violence. He has a conviction for a simple possession, which is at paragraph 29. And the facts surrounding, the circumstances surrounding that simple possession, the defendant made a statement to law enforcement that I will, and I quote, I will kill both you pigs, which is another example and instance upon which the defendant has illustrated himself to be dangerous. Are you aware of the Supreme Court having granted cert in a simple possession predicate for disarming? There seems to be a case, I think, coming up this term. It's not necessarily simple possession. It's drug user in possession of, excuse me, being a drug user while in possession of a firearm. So there was actual use at the time of possessing the firearm. That is, in the instant case, we're unaware of that. But the case before the Supreme Court that has that fact. That's an issue. Well, that leads me to ask the next question. We were talking about whether or not the acts or what the defendant is doing at the time of the current offense, whether that's relevant or not. What's the government's position on that? The government position is very much relevant because at any time the defendant has, through Williams, had the opportunity to show that he is not dangerous at the time of the hearing. Those facts are very relevant. So if he's in fact. Let me ask you, counsel, I'm struggling to understand under the guidance of Williams and its language about past convictions, what would allow the dangerousness determination to be made on the present crime? The government is relying on a footnote 12 and in goings footnote to, I believe, excuse me, bond U.S. versus bond and footnote to which stated that any yes, past convictions, but also any judicial noticeable information, which is again quoted from Williams. And so the instant case, of course, with the trial, you have the transcript, the facts that were born at trial or the PSR as well. The facts that are that are unrebutted. Isn't isn't this a little bit isn't this in a little bit of different situation? Because it's what I would just call a closed class. This is in that category of cases that that fall in between these two decisions so that, in fact, they already have a PSR. But under Williams, everything going forward will breathe will be pre conviction. So there will be nothing judicially noticeable save the indictment. Isn't that correct? Correct. And so that is that's a very different circumstance from this closed class. Right. Yes. So if in this situation, the only thing under the Williams language is that's judicially noticeable is the indictment. And the instruction from Williams of what may be considered, which is any evidence of past convictions in the record, as well as other judicially noticeable information. So that language seems to me to be very clear about a past conviction. And your arguments may seem different in this small group of closed class cases, but not different under the prescription in the education of Williams. Isn't that the case? That is the case. However, as Judge Bush mentioned, there is currently a Supreme Court case. Certainism granted cert. And that deals with the very same issue of whether you. But we aren't there yet. We don't have their answer. Correct. Correct. Yes. So essentially, now you're looking at the one judicially notice fact future and past convictions. So that leaves you with past convictions. Right. Right. Not current dangerousness. It just strikes me as odd that we could be looking historically at past convictions. Let's say that person doesn't have past convictions, but they do something pretty dangerous. Well, they've got to have one for a felony, don't they? So they do something pretty serious in this case. And then the only dangerousness that we have to look to is the current situation. I don't see that being Williams' teaching that you could decide the entirety of dangerousness based on the current not yet convicted behavior. Well, in this case, I don't think it would be of consequence because of, of course, the several convictions that the defendant do have. We don't have to cross that bridge, do we? That's a fair answer and a smart answer in this case. Yes, Your Honor. And so because, again, the extensive history that he has, again, that alone, this court can affirm the judgment below. In addition, with respect to the issue of the defendant being on supervised release, the defendant was on supervised release nine months before the incident case occurred. Judge Bush wrote the concurring opinion in Goings, which stated that also alone is sufficient to show the defendant is dangerous. And going back just to the issue of whether, again, with respect to the jury making that decision, making the decision as to dangerousness, the Williams court specifically outlined, based on the factors that the court can use to make that decision, because the fact Williams stated the court, for example, the court can accept prior convictions. The court may consider defendants' entire criminal record. Basically, it is unreasonable to infer that a jury can make that, makes that determination and not the court, especially because of, again, the historical, what have historically been done, what Williams specifically state, what the court instructed or advised to do in making those determinations. And this is not, the other distinction that seems important to me in Williams is that this is not a case of having an aggravator or an element of the crime. And because we don't do that, there is, I don't see that there is a rationale for saying that this should be a jury determination, as opposed to what we would call the meat and potatoes of what a district judge does in every criminal case, right? The government agrees. As defendant relies on Erlinger versus the United States, that was a fact determination with respect to on or different occasions where the defendant had on or different, have convictions that occurred on or different occasions, excuse me. And that is essentially an element of a criminal offense, upon which, of course, the Sixth Amendment guarantees the right of the defendant to have a jury trial for criminal prosecutions. This is a matter of a constitutional, a legal issue of whether a statute is constitutional. Totally different issues, circumstances. And based on that as well, again, is the reason why, again, a judge can make that determination. There is also part of the history which the government understands that 18 United States Code 925C has outlined, Congress has basically outlined a provision upon which a defendant or a prohibited person can seek those rights. The government does understand that, of course, there is no funding for that process right now. But I think it speaks a volume which shows kind of continues the historical tradition as to how an individual can obtain their firearms rights. The Attorney General or the Bureau of Alcohol, Tobacco, Firearms or Explosives, the individual could petition that entity to obtain their rights. And if they were denied, then they could appeal and petition to the district court. Again, another kind of form of the historical nature to show that, again, the district court, again, is the entity that can make that decision. Go back to the predicate acts for a determination of violence. How does the government feel? What's your position about his behavior in prison? Is that relevant to this determination or not? So, yes. As long as it is also prior to, I guess to make a fine line, prior to the instant conduct upon which he'd been convicted of. If there are instances of, yes, violence, dangerousness there or potential risk of dangers, then yes, that is something that should be considered as well. And I believe there's something in the record here of his having had some infractions and using a violent, some sort of a weapon or something in prison, is that right? I don't recall. I know there were some sexual offenses and disobeying, but I can't recall if there were. Oh, maybe not anything in the record about a use of an object as a weapon? I don't recall. Okay. And so, in conclusion, again, under plain error review, again, there is no, again, obvious or clear error. And if there is no error also that would affect the outcome of the proceedings, because, again, this court can see that based on the criminal history, the defendant is, in fact, dangerous and the district court's judgment should be affirmed. Thank you, Mr. Young. Mr. Tableman, you have rebuttal. Thank you very much, Your Honor. I think it's a dangerous path to walk down and say that the district court or the trier fed can consider matters other than convictions in determining dangerousness. And I say that because the facts of allegations about this or that conduct that may appear in a pre-sentence report or a police report haven't been subjected to the same kind of testing and the same kind of constitutional safeguards that a conviction has. And I think you're jeopardizing a person's right to provide a due process if you're going to say, okay, now we're going to subject you to up to 15 years under current law as a felon in possession based on something in a pre-sentence report that's years old. So I respectfully suggest that that's not appropriate. As far as who is to make the decision of dangerousness, I'm going to repeat myself and say that, sure, district judges make these kinds of determinations all the time in other contexts. District judges do not make determinations of guilt or innocence. That's juries. The Second Amendment was enacted. It's an amendment to the Constitution that the people ultimately provided. And when a defendant says, you can't prosecute me because I have a right under the Second Amendment, I have a constitutional right to bear arms, I respectfully suggest that the jury of peers should be the one to make the determination. I believe in the armed career criminal act context, before the Wooden and Erlanger decisions, judges would say, well, you know, it's obvious that this occurred on different occasions. And it might be obvious to judges and lawyers, but the Supreme Court has said that's up to a jury to decide. Well, let me ask you this. Say that a defendant is charged with a felon in possession and his attorney says, you know what, you've just got a conviction for bank fraud. I don't even think that this statute applies to you. I'm going to file a motion to dismiss. Does that mean that the judge at that point can't make a determination as to whether or not him being charged with the 922G1 violated the Constitution? I think that's a little bit of a different question. The question from Eric Williams is dangerousness. Well, the reason, though, is because he merely has a bank fraud, which is a nonviolent crime. He says I'm not dangerous. So this is unconstitutional as applied to me. I think it's the same question. In that hypothetical, I would say it's up to a jury to decide. Let the jury decide. How you would do that practically, I don't know. It might be difficult. Maybe we have to have two juries. Maybe we have a jury to determine is this person dangerous before we go on to have our trial about did he possess the firearm. No one said that protecting constitutional rights was efficient. Your argument would be that the three categories established in Williams really don't matter, that this is a jury determination. There are the three categories, the most dangerous category, one, and then two, the intermediate, and then the third one is the example you've been given, something that really does not support dangerousness but is in fact a felony. So you think that none of those, the categorical descriptions of dangerousness, play a role, that it just is simply a statement to be asked of the jury? I guess I would say yes, Your Honor, and I would say that because it's a quagmire to go through, offense by offense, matter by matter, what information to discover, how do we determine it, and you're talking about not some preliminary determination about release on bond, you're talking about taking away a person's liberty and taking away their constitutional right to bear arms, and I don't know why we can't say that a jury must make that decision. It almost to me seems like the Williams case creates dangerousness as an element of the offense. If you're not dangerous, it's not constitutional to prosecute you. So respectfully, that's my argument, Your Honor. Thank you. Okay. Thank you, Mr. Tableman. I appreciate your representing your client in this matter, and thank you, counsel, for both sides for your arguments. We'll take the matter under submission.